IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

BOJ OF WNC, LLC d/b/a            *
BOJANGLES FAMOUS CHICKEN N       *
BISCUITS,                        *
                                 *
        Plaintiff,               *          CV 122-124
                                 *
        v.                       *
                                 *
HOUSTON CASUALTY COMPANY,        *
WESTFIELD NATIONAL INSURANCE     *
COMPANY, and ENCOVA MUTUAL       *
INSURANCE GROUP, INC.,           *
                                 *
        Defendants.              *
                                 *

### O R D E R

Before the Court are Defendant Westfield National Insurance Company's ("Westfield") motion for summary judgment[1] (Doc. 74), Plaintiff's motion for partial summary judgment (Doc. 76), Westfield's motion to amend and for leave to supplement the record (Doc. 128), and Plaintiff's motion to amend (Doc. 131). For the following reasons, Westfield's motion for summary judgment is **DENIED AS MOOT**, Plaintiff's motion for partial summary judgment is **DENIED AS MOOT**, Westfield's motion to amend and supplement the

---

[1] Westfield sought leave to file excess pages for its brief in support of its motion for summary judgment. (Doc. 73.) However, before this motion was addressed, Westfield filed its motion for summary judgment. (Doc. 74.) Therefore, Westfield's motion seeking leave to file excess pages (Doc. 73) is **DENIED AS MOOT**.

record is **GRANTED IN PART, DENIED IN PART**, and **DENIED AS MOOT IN PART**, and Plaintiff's motion to amend is **GRANTED**.

## I. BACKGROUND

This declaratory judgment action arises out of an underlying lawsuit, <u>Davis, as Guardian of D.W., a Minor v. BOJ of WNC, LLC</u>, CV 121-155 (S.D. Ga. Oct. 11, 2021) (the "Underlying Lawsuit"). (Doc. 1, ¶ 19; Doc. 1-1.) Plaintiff seeks insurance coverage from Defendants for the claims in the Underlying Lawsuit. (<u>Id.</u> ¶¶ 25-92.) Plaintiff dismissed Defendants Houston Casualty Company and Encova Mutual Insurance Group, Inc. from this action. (Docs. 64, 101.) Thus, the only remaining parties are Plaintiff and Westfield.

On July 20, 2023, Westfield moved for summary judgment, and on July 21, 2023, Plaintiff moved for partial summary judgment. (Docs. 74, 76.) In August 2023, following receipt of a time limit demand from the underlying plaintiff, Westfield agreed to defend Plaintiff under a reservation of rights in the Underlying Lawsuit. (Doc. 90-1, at 5.)

Plaintiff moved to stay this action because the remaining dispute over Westfield's duty to indemnify would not become ripe until a final judgment was issued in the Underlying Lawsuit. (Doc. 92.) Following a hearing on the Parties' summary judgment motions and Plaintiff's motion to stay, the Court stayed this action on

2

November 16, 2023 pending resolution of the Underlying Lawsuit. (Doc. 98.) The Parties mediated the Underlying Lawsuit on December 15, 2023 and reached a settlement. (Doc. 114, at 5.) In furtherance of settlement of the Underlying Lawsuit, Westfield and Plaintiff entered a separate recoupment agreement to recoup certain amounts from one another pending the outcome of this action (the "Agreement"). (Doc. 117-2, at 1.) The Underlying Lawsuit was dismissed on March 21, 2024. See Davis, as Guardian of D.W., a Minor v. BOJ of WNC, LLC, CV 121-155, Doc. 165 (S.D. Ga. Mar. 21, 2024).

On June 11, 2024, Westfield moved for leave to amend its answer and supplement the record. (Doc. 128.) Westfield's proposed amendment contains a new counterclaim based on the Agreement. (Doc. 128-1, at 4-6.) On June 21, 2024, the Court denied Plaintiff's motion to voluntarily dismiss the action and held this motion in abeyance to give Plaintiff an opportunity to file an informed response and its own motion to amend if desired. (Doc. 129.) The Court also lifted the stay. (Id. at 12.) On July 5, 2024, Plaintiff filed a motion to amend its complaint and a response in opposition to Westfield's motion to amend and supplement the record. (Docs. 130, 131.) Westfield likewise filed a response in opposition to Plaintiff's motion to amend. (Doc. 133.) Both Parties have filed replies. (Docs. 134, 136.) The motions are now fully briefed and ripe for review.

3

would be futile.  For these reasons, Plaintiff's motion for leave to amend is **GRANTED**.

## B. Ripeness of Motions for Summary Judgment

Because leave to amend has been granted to both Parties since the filing of their motions for summary judgment, the Court finds the pending motions for summary judgment are moot.  Pintando v. Miami-Dade Hous. Agency, 501 F.3d 1241, 1243 (11th Cir. 2007) ("As a general matter, an amended pleading supersedes the former pleading; the original pleading is abandoned by the amendment, and is no longer a part of the pleader's averments against his adversary." (alteration adopted and internal quotation marks and citations omitted)); Malowney v. Fed. Collection Deposit Grp., 193 F.3d 1342, 1345 n.1 (11th Cir. 1999) ("An amended complaint supersedes an original complaint." (citation omitted)).  There is a split among courts in this Circuit whether and in what circumstances a motion for summary judgment is mooted by an amended pleading.  See Cincinnati Specialty Underwriters Ins. Co. v. J&T's Warehouse, Inc., No. CV418-205, 2019 WL 6716381, *1 (S.D. Ga. Dec. 9, 2019) (finding the plaintiffs' motions for summary judgment were mooted by an amended pleading even though the allegations were not materially changed, and all defendants had responded to the motions for summary judgment); Phillips Nizer LLP v. 2600 Courtland, LLP, No. 8:09-CV-1226, 2010 WL 11640196, *2 (M.D. Fla. Apr. 26, 2010) (finding the plaintiff's motion for summary judgment

18

mooted by the defendants' amended answer); Savannah Motorcars, LLC v. Volkswagen Grp. of Am., Inc., No. 4:20-CV-37, 2022 WL 866342, at *5 n.8 (S.D. Ga. Mar. 22, 2022) (considering previously filed summary judgments after amendment of pleadings where the changes were minor and did not add any new claims or charges).   Courts have found a motion for summary judgment is not necessarily mooted by amended pleadings where no parties moved to add any claims or change significant factual allegations in the pleading and none of the parties had requested leave to supplement their motions for summary judgment.   Savannah Motorcars, 2022 WL 866342, at *5 n.8. However, even where there have been no material changes to the action through amendments, courts have deemed pending motions for summary judgment moot.   Cincinnati Specialty, 2019 WL 6716381, at *1.

Here, the amendments will provide significant changes to the pleadings, and both Parties indicate additional briefing is needed to properly address any motion for summary judgment.   (See Doc. 1; Doc. 60; Doc. 128-1; Doc. 131-1; Doc. 130, at 4; Doc. 128, at 4; Doc. 133, at 6; Doc. 134, at 8.)   Plaintiff contends the pending motions for summary judgment are "stale" and additional limited discovery is necessary to "develop the facts necessary to address" the terms of the Agreement.   (Doc. 130, at 4.)   While Westfield contends the motions for summary judgment are ripe and urges the Court to issue a ruling on these motions, it also moves to

19

## II. DISCUSSION

Because the Parties' motions to amend could moot the pending motions for summary judgment, the Court first addresses the motions to amend before addressing the other pending motions.

### A. Motions to Amend

Both Parties seek leave to amend their pleadings based on events in the Underlying Lawsuit. (Docs. 128, 131.)  As outlined above, the Parties entered the Agreement pertaining to recoupment of settlement costs of the Underlying Lawsuit.  (Doc. 117-2, at 1.)  The Agreement provides:

> Court will opine on coverage under Westfield Policies. If [Plaintiff] successful, [Plaintiff] may seek return of the $1,375,000 amount it contributed in the coverage action.    If  Westfield  successful,  Westfield  has recoupment rights against [Plaintiff] for $1,625,000 in the coverage action.  [Plaintiff] and Westfield will amend their claims in the coverage action to assert these recoupment claims.

Id.  Despite the Parties' agreement to "amend their claims" in this action, the Parties now oppose each other's motions to amend. (Docs. 130, 133.)

The Parties dispute whether the proposed amendments should be analyzed under Federal Rule of Civil Procedure 15 or 16.  (Doc. 130, at 3; Doc. 133, at 6.)  Generally, a party seeking leave to amend after the scheduling order's deadline must first demonstrate good cause under Rule 16(b) before the Court will consider whether amendment is proper under Rule 15(a).  Sosa v. Airprint Sys., Inc.,

4

133 F.3d 1417, 1418 n.2 (11th Cir. 1998) (citations omitted) ("[W]hen a motion to amend is filed after a scheduling order deadline, [Federal Rule of Civil Procedure] 16 is the proper guide for determining whether a party's delay may be excused." (citation omitted)). "Whether to allow amendment under Rule 16 rests with the [c]ourt's sound discretion." Home Legend, LLC v. Mannington Mills, Inc., No. 4:12-CV-0237, 2014 WL 12489761, at *1 (N.D. Ga. July 2, 2014) (internal quotation marks omitted) (citations omitted).

Here, the scheduling order set the last day for filing motions to amend or add parties as December 10, 2022. (Doc. 31, at 1.) Thus, both Parties' motions are well past the scheduling order deadline, so the Court first considers whether there is good cause under Rule 16. See Sosa, 133 F.3d at 1419. First, it is apparent the Parties consented to amendment prior to either Party seeking leave. (See Doc. 117-2, at 1.) Moreover, the facts underlying the proposed amendments did not occur until after the deadline to amend had passed, so "the schedule [could not have been] met despite the diligence of the party seeking the extension." Sosa, 133 F.3d at 1418 (internal quotation marks and citations omitted). Furthermore, considering the mutual consent to amend in the Agreement and Westfield's motion to amend based on the Agreement, the Court allowed Plaintiff to file a motion to amend if it so desired. (Doc. 129, at 11.) For these reasons, the Court finds

the Parties have shown good cause under Rule 16. Thus, the Court will consider the propriety of the proposed amendments under Rule 15.

Under Rule 15, parties may amend their pleadings "once as a matter of course no later than" twenty-one days after serving it or, if the pleading is one to which a responsive pleading is required, twenty-one days after service of a responsive pleading or service of certain motions under Rule 12, whichever is earlier. FED. R. CIV. P. 15(a)(1). For all other amendments, parties may amend only with the opposing party's written consent or the Court's leave. FED. R. CIV. P. 15(a)(2). Because the Parties' motions fall outside of the time period to amend as a matter of course, they can amend "only with the opposing party's written consent or the court's leave." FED. R. CIV. P. 15(a)(1)-(2). Rule 15 provides courts should "freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2). However, district courts are given "extensive discretion" to decide where to allow an amended pleading. Campbell v. Emory Clinic, 166 F.3d 1157, 1162 (11th Cir. 1999) (citation omitted). The Court has the power to deny leave to amend for undue delay, fairness, or futility. Chen v. Lester, 364 F. App'x 531, 538 (11th Cir. 2010) (citation omitted). An amendment is futile when the complaint would still be subject to dismissal. Id. (citing Hall v. United Ins. Co. of Am., 367 F.3d 1255, 1262-63 (11th Cir. 2004)).

As discussed above, both Parties consented via the Agreement to allowing amendment. (Doc. 117-2, at 1.) However, it appears based on the Parties' oppositions that such consent has been withdrawn. (Docs. 131, 133.) Therefore, the Court considers whether leave to amend should be granted under Rule 15(a)(2). The Court considers each Party's motions for leave to amend in turn.

1. Westfield's Motion for Leave to Amend

Westfield seeks leave to amend its answer to add factual allegations concerning the formation and terms of the Agreement and a counterclaim based on the Agreement. (Doc. 128, at 1-4.) Westfield's proposed amendment seeks to preserve its right to recover the amount it contributed to the settlement of the Underlying Lawsuit pursuant to the Agreement. (Doc. 128-1, at 1.) Westfield seeks to add factual allegations to its answer concerning the existence of the Agreement, its formation, and the terms of the Agreement. (Id. at 1-4.) Westfield also asserts a counterclaim for "breach of contract/recoupment agreement." (Id. at 4.) Westfield describes its contribution to the settlement of the Underlying Lawsuit as an "advance" and contends it has a "contractual right to seek recoupment against Plaintiff" for the amount agreed upon in the Agreement dependent on the outcome of the Court's determination of Westfield's obligations under the insurance coverage contract. (Id. at 4-5.) Westfield states "[i]n the event the Court determines there is no duty . . . and

7

[Plaintiff] does not reimburse Westfield . . . , [Plaintiff] will have breached its duty under the [Agreement]." (Id. at 6.) Westfield contends the requested amendment will not unfairly prejudice Plaintiff or cause unreasonable delay of this action. (Doc. 128, at 4.)  Rather, Westfield argues allowing amendment, with respect to the pending motions for summary judgment, "will foster a more efficient determination of the remaining issues." (Id. (citation omitted).)

Plaintiff contends allowing Westfield's amendment would prejudice it because such amendment "could significantly impact the Court's analysis of [its] bad faith claim." (Doc. 130, at 4.) Plaintiff argues Westfield's motion to amend, which also seeks to supplement the briefing related to summary judgment, acknowledges the Parties' relationship has changed since the filing of summary judgment motions, and the Court should consider this motion under Rule 16 as a motion to modify the scheduling order. (Id. at 3-4.)  Plaintiff asserts the Court should allow the Parties time to "develop the facts necessary to address the proposed recoupment claim," and any motion to amend should be denied until the Parties have such an opportunity to prevent "ambush" and prejudice to either Party. (Id. at 4-5.)

As the Court addressed above, there is good cause to allow the Parties to seek leave to amend past the deadline under Rule 16.  Therefore, the Court turns to Rule 15 to determine whether

8

Westfield should be permitted to amend its pleadings. <u>Sosa</u>, 133 F.3d at 1419.  First, the Court finds there was no undue delay in Westfield seeking to amend its pleading to assert a counterclaim based on the Agreement.  As noted above, the Agreement did not exist until settlement of the Underlying Lawsuit in December 2023 while this action was stayed.  (Doc. 117-2, at 1.)  On May 1, 2024, Westfield first sought to add the counterclaim in response to Plaintiff's attempt to voluntarily dismiss this action in alleged violation of the Agreement.  (Doc. 117, at 6–11.)  Westfield explained it waited until May to bring the Agreement to the Court's attention because it did not believe it necessary until Plaintiff's motion for voluntary dismissal was filed on April 17, 2024.  (<u>Id.</u> at 9; Doc. 115.)  Thus, the Court finds there was no undue delay in seeking amendment.

Second, for many of the reasons outlined above and in the Court's June 21, 2024 Order denying Plaintiff's motion for voluntary dismissal, the Court finds fairness also weighs in favor of allowing amendment.  (<u>See</u> Doc. 129.)  As stated above, the Parties originally agreed to allow amendment to allege facts related to the Agreement.  (Doc. 117-2, at 1.)  In reliance on this Agreement, Westfield moved for leave to amend, and only after its motion did Plaintiff oppose the amendment.  (Docs. 117, 128, 130.)  Plaintiff's arguments that allowing amendment would prejudice them at this stage of litigation are also unavailing.

9

As the Court will explain further below, the issues in the pending motions for summary judgment will be mooted and a revised schedule for renewing these motions based on any new pleadings allowed. Thus, the Court finds Plaintiff's arguments concerning prejudice as to the pending motions for summary judgment unpersuasive. The Court also finds Plaintiff's contentions that amendment would allow Westfield to "improperly ambush" it and it needs time to "develop facts necessary to address the proposed recoupment claim" unavailing because Plaintiff originally *agreed* to this amendment. (Doc. 130, at 4-5; Doc. 117-2, at 1.) Furthermore, as outlined below, Plaintiff will be given an opportunity to address any amendment by Westfield. For these reasons, the Court finds fairness weighs in favor of allowing Westfield leave to amend.

Finally, as to futility, the Court finds Westfield's proposed amendment is futile to the extent it seeks to add a claim for recoupment or breach of contract. In its motion, Westfield asserts it "seeks leave to amend its Answer to assert its Counterclaim for Recoupment against Plaintiff." (Doc. 128, at 4.) Indeed, its proposed amendment is titled "counterclaim for recoupment." (Doc. 128-1, at 1.) Additionally, Westfield cites Georgia recoupment statutes in its original response brief requesting amendment. (Doc. 117, at 2, 6-7.) However, Count I of its proposed amendment is titled "breach of contract/recoupment agreement." (Doc. 128-1, at 4.) It is unclear exactly what counterclaim – recoupment or

10

breach of contract – Westfield intends to bring, but because either would be subject to dismissal for failure to state a claim, the Court finds them futile.   <u>Chen</u>, 364 F. App'x at 538 (citation omitted); <u>see also</u> <u>Hall</u>, 367 F.3d at 1263.

In Georgia, a recoupment counterclaim allows a defendant to deduct "from the amount of the plaintiff's damages for the reason that the plaintiff *has not complied* with the cross-obligations or independent covenants arising under the contract upon which suit is brought."   O.C.G.A. § 13-7-2 (emphasis added).   "Recoupment lies for overpayments by the defendant or for payments by fraud, accident, or mistake." O.C.G.A. § 13-7-12.  First, Westfield never alleges in its proposed amendment that Plaintiff "has not complied" with any cross-obligation or independent covenants arising under either the Agreement or the insurance coverage contract between Westfield and Plaintiff.   (<u>See</u> Doc. 128-1); O.C.G.A. § 13-7-2. Westfield alleges only that should the Court determine there is no duty under the insurance coverage contract and Plaintiff does not reimburse Westfield, then Plaintiff will have breached its duty or obligations under the Agreement.   (Doc. 128-1, at 6.)    A conjectural or hypothetical failure to uphold an obligation, however, is not sufficient to allege "plaintiff *has not complied* with the cross-obligations or independent covenants arising under the contract." O.C.G.A. § 13-7-2 (emphasis added).   Thus, the amendment fails to state a claim for recoupment because the right

11

to deduct from Plaintiff's damages has not been triggered by any alleged failure to comply with its obligations.

Even if Westfield sufficiently alleged Plaintiff's non-compliance, Westfield has also failed to allege facts demonstrating it made "overpayments" or "payments by fraud, accident, or mistake" to Plaintiff. (See Doc. 128-1); O.C.G.A. § 13-7-12. As to "overpayment," Westfield does not argue it is due reimbursement because it *overpaid* Plaintiff in settling the Underlying Lawsuit, but rather it asserts it did not owe *any* money to Plaintiff at all if the Court finds it did not have a duty to defend or indemnify Plaintiff in the Underlying Lawsuit. (Doc. 128, at 2-3; Doc. 128-1, at 1, 3-4, 6.) Georgia courts have rejected similar arguments that such payments, even when payment was protested at the time it was made, constituted an "overpayment" under O.C.G.A. § 13-7-12. See Wallis v. B&A Const. Co, Inc., 614 S.E.2d 193, 198-200 (Ga. Ct. App. 2005) (rejecting the argument that because the defendant should not have paid any money once its contractual obligation ended that any subsequent payments constituted as overpayment under the Georgia recoupment statute). Furthermore, Westfield makes no allegations of "fraud, accident, or mistake" in its settlement payment. (See Doc. 128-1.) Rather, Westfield's allegations tend to support the complete opposite conclusion – Westfield knowingly entered the Agreement with Plaintiff to make payment towards the Underlying Lawsuit's

12

settlement.   (Id. at 2-4.)   Westfield's allegation of a "contractual right to seek recoupment against Plaintiff" and the fact that the Agreement is titled "Recoupment Agreement" do not alter the Court's analysis of whether a claim for recoupment under Georgia law has been sufficiently alleged.   (Id. at 5.)   Rather, Westfield contractually preserved its right to recover from Plaintiff and vice versa dependent on the Court's determination of certain obligations under the insurance coverage contract.   (Doc. 117-2, at 1.)   Indeed, the Agreement is better categorized as a contract limiting recovery and damages.   The Parties are within their rights to enter such an agreement, but that does not mean Westfield is entitled to recoupment as outlined under Georgia law based solely on the terms of the Agreement.   O.C.G.A. §§ 13-7-2, 13-7-12.  Because Westfield's proposed counterclaim for recoupment would be subject to dismissal, this claim is futile and leave to amend to add this claim is **DENIED**.

Turning to Westfield's "breach of contract" counterclaim, it is futile for similar reasons.   "The elements for a breach of contract claim in Georgia are the (1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken."   Norton v. Budget Rent A Car Sys., Inc., 705 S.E.2d 305, 306 (Ga. Ct. App. 2010) (citations omitted).   "A breach occurs if a contracting party repudiates or renounces liability under the contract; fails to perform the engagement as

13

specified in the contract; or does some act that renders performance impossible." Cordell & Cordell, P.C. v. Gao, 771 S.E.2d 196, 200 (Ga. Ct. App. 2015) (citation omitted). Westfield never alleges breach by Plaintiff. (See Doc. 128-1.) Again, the closest Westfield comes is alleging breach *would* happen if Plaintiff failed to reimburse Westfield upon the triggering events outlined in the Agreement. (Id. at 6.) Moreover, Westfield made no allegations that breach is certainly impending or there is a substantial risk of breach based on Plaintiff's conduct. (See id.) Because Westfield failed to allege an essential element of a breach of contract claim in its proposed amendment, such amendment would be futile and leave to amend to add this counterclaim is **DENIED**.

Notwithstanding the futility of Westfield's counterclaims, the Court finds the factual allegations concerning the Agreement are relevant to any potential recovery by the Parties. Thus, rather than stating a counterclaim for affirmative relief, the proposed amendment pertaining to existence of the Agreement could provide a partial defense to any potential recovery by Plaintiff from Westfield.[2] Under Federal Rule of Civil Procedure 8(c)(2), "[i]f a party mistakenly designates a defense as a counterclaim, or a counterclaim as a defense, the court must, if justice

---

[2] The Court notes the Parties contest the extent of such limitations under the Agreement. (Doc. 133, at 1-3; Doc. 136, at 5.)

requires, treat the pleading as though it were correctly designated, and may impose terms for doing so." In the interest of justice, Westfield may amend to allege the facts giving rise to the Agreement as set out in the proposed amended answer. (Doc. 128-1, at 1-4.) For the foregoing reasons, Westfield's motion to amend (Doc. 28) is **GRANTED IN PART** and **DENIED IN PART**.

    2. <u>Plaintiff's Motion for Leave to Amend</u>

Plaintiff also seeks leave to amend its complaint. (Doc. 131.) Unlike Westfield's amendment, Plaintiff does not seek to add any new claims. (Doc. 131-1, at 12-15.) Rather, Plaintiff seeks to remove allegations against the terminated parties and add allegations of facts concerning the "false imprisonment" of the plaintiff in the Underlying Lawsuit, Westfield's appearance in the Underlying Lawsuit, and the events leading to the settlement of the Underlying Lawsuit, including the Agreement. (Doc. 131-1, at 5, 9-12.)

Plaintiff asserts its proposed amendments "will assist the Court and the [P]arties to narrow the issues at trial and streamline the litigation." (Doc. 131, at 4.) Plaintiff further argues if Westfield is allowed to amend its pleadings, then Plaintiff should also be allowed to amend as a matter of fairness and equity. (<u>Id.</u> at 5.) Westfield contends Plaintiff's motion for leave to amend should be denied because Plaintiff improperly seeks to expand the litigation by amending to add facts not

anticipated by the Agreement, including facts referring to "false imprisonment" and Westfield's appearance in the Underlying Lawsuit. (Doc. 133, at 3.) Westfield also argues Plaintiff's proposed amendments misrepresent the terms of the Agreement, which Westfield contends limits Plaintiff's sole remedy to $1,375,000. (Id. at 2-3, 5-6.)

As set out above, Rule 15's more liberal standard provides courts should "freely give leave when justice so requires," but the Court considers whether undue delay, fairness, or futility should nevertheless preclude allowing amendment. FED. R. CIV. P. 15(a)(2); Chen, 364 F. App'x at 538 (citation omitted). First, as a matter of fairness and equity, the Court finds Plaintiff should be allowed to amend to add allegations pertaining to the Agreement. Westfield's contention that Plaintiff's proposed amendments somehow misinterpret the terms of the Agreement, and that Plaintiff should be limited to certain recovery under the Agreement, are matters of contract interpretation. (Doc. 133, at 2-3.) Westfield's arguments opposing Plaintiff's proposed amendments concerning the Agreement are properly characterized as defenses and do not demonstrate Plaintiff's leave to amend should be denied because of undue delay, fairness, or futility. Westfield has been allowed to amend to assert factual allegations pertaining to the Agreement, so in equity and fairness, Plaintiff should be allowed to do the same. Westfield's disagreement with Plaintiff's

16

portrayal of the facts, without more, is not enough to preclude allowing amendment.

As to Plaintiff's other proposed amendments, Westfield contends Plaintiff improperly seeks to expand its liability at this late stage in litigation by adding allegations pertaining to the "false imprisonment" of the plaintiff in the Underlying Lawsuit and Westfield's appearance in the Underlying Lawsuit. (Id. at 5-6.) Plaintiff contends Westfield was aware of these issues after summary judgment motions were filed, so there is no prejudice in allowing amendment because these relevant facts and allegations are intended to narrow the issues at trial. (Doc. 136, at 6.) While these amendments were not previously consented to in the Agreement, the Court nevertheless finds them permissible under these circumstances. (See Doc. 117-2, at 1.) The facts underlying these allegations occurred after summary judgment motions were filed, just before the case was stayed. (See Doc. 90-1, at 4-19.) The stay was just lifted, and, with the Court's permission, Plaintiff immediately moved for leave to amend to add these allegations. (Docs. 129, 131.) Therefore, the Court finds there was no undue delay. The Court also finds no showing of prejudice because Westfield was aware of these facts and has also been allowed to amend to add facts arising since the original summary judgment motions were filed. Finally, there is no argument by Westfield and the Court can discern no reason why such amendment

17

supplement its briefing on the motions for summary judgment and states it "is not opposed to . . . the Parties . . . submit[ting] [s]upplemental [b]riefs to support their cross-motions for summary judgment." (Doc. 128, at 4; Doc. 133, at 6; Doc. 134, at 8.) Because of the Parties' amendments, their mutual desire to supplement the motions for summary judgment, and the multiple issues that are now ripe that were not at the time of filing the original motions for summary judgment, the Court finds the pending motions for summary judgment shall be **DENIED AS MOOT**. This dismissal in no way prejudices the Parties from renewing arguments made in their motions for summary judgment in any subsequent motions. Because the motions for summary judgment are mooted, Westfield's motion to file supplemental briefing (Doc. 128) on these motions is likewise **DENIED AS MOOT**.

### III. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Westfield's motion for summary judgment (Doc. 74) is **DENIED AS MOOT**; Plaintiff's motion for partial summary judgment (Doc. 76) is **DENIED AS MOOT**; Westfield's motion to amend and motion for leave to supplement the record (Doc. 128) is **GRANTED IN PART, DENIED IN PART**, and **DENIED AS MOOT IN PART**; and Plaintiff's motion to amend (Doc. 131) is **GRANTED**. The Parties shall have **SEVEN DAYS** from the date of this Order to submit their amended pleadings as set forth

herein as standalone entries on the docket.   The Parties shall have **THIRTY DAYS** from the date of the Order to file any responsive pleadings to the amended pleadings.   The Parties shall have **NINETY DAYS** from the date of this Order to conduct limited discovery on the facts pertaining to the amendments and file any renewed or new motions for summary judgment.[3]

    **ORDER ENTERED** at Augusta, Georgia, this ___ day of August, 2024.

                         HONORABLE J. RANDAL HALL
                         UNITED STATES DISTRICT JUDGE
                         SOUTHERN DISTRICT OF GEORGIA

---

[3] While the Parties are not prejudiced from renewing arguments from their past motions for summary judgment, in any future motions for summary judgment, the Parties must set out their arguments fully therein and may not incorporate by reference arguments previously made in other briefings.  Arguments incorporated by reference will not be considered by the Court.

21