IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

BOJ OF WNC, LLC d/b/a          *
Bojangles Famous Chicken N     *
Biscuits,                      *
                               *
        Plaintiff,             *        CV 122-124
                               *
        v.                     *
                               *
WESTFIELD NATIONAL INSURANCE   *
COMPANY,                       *
                               *
        Defendant.             *
                               _____

O R D E R

                               _____

        Before the Court are Plaintiff's motion to strike certain

affirmative defenses (Doc. 143); Defendant Westfield National

Insurance Company's ("Westfield") motion for summary judgment

(Doc. 151), and Plaintiff's motion for partial summary judgment

(Doc. 153).[1]  For the following reasons, Plaintiff's motion to

strike is **GRANTED IN PART AND DENIED IN PART**, Westfield's motion

for summary judgment is **GRANTED IN PART AND DENIED IN PART**, and

Plaintiff's motion for partial summary judgment is **GRANTED**.

---

[1] Also pending before the Court are Plaintiff's motion to strike certain
affirmative defenses in Westfield's amended answer (Doc. 140) and the Parties'
motions for hearings on their motions for summary judgment (Docs. 182, 183).
Because Westfield's amended answer is no longer its operative answer,
Plaintiff's motion to strike affirmative defenses (Doc. 140) is **DENIED AS MOOT**.
Additionally, because the motions for summary judgment have been thoroughly
briefed, the Court finds no need to conduct a hearing on the matter.  As such,
the Parties' motions for hearings (Docs. 182, 183) are **DENIED**.

## I. BACKGROUND

The procedural history of this case was laid out in detail in the Court's August 19, 2024 Order. (Doc. 137, at 2-3.) Nonetheless, the Court expands upon the relevant procedural and factual background here.

### A. Procedural History

This declaratory judgment action arises out of an underlying lawsuit, <u>Davis, ex rel. D.W., a Minor v. BOJ of WNC, LLC</u>, CV 121-155 (S.D. Ga. Oct. 11, 2021) (the "Underlying Lawsuit"). (Doc. 1, at 4; Doc. 1-1.) On December 15, 2023, the Underlying lawsuit was mediated. (Doc. 114, at 5.) At the mediation the Parties reached a settlement agreement, which included an agreement to recoup certain amounts from one another pending the outcome of this action (the "Agreement"). (Doc. 117-1, at 3-4; Doc. 117-2.) In light of the Agreement, Plaintiff moved to voluntarily dismiss this action (Doc. 15) and Westfield moved for leave to amend its answer and supplement the record (Doc. 128). On June 21, 2024, the Court denied Plaintiff's motion to dismiss, and on August 19, 2024, the Court granted in part and denied in part Westfield's motion to supplement the record and granted Plaintiff's motion to amend. (Doc. 137.) Plaintiff timely filed an amended complaint (Doc. 139), and Westfield timely answered (Doc. 141).

On October 9, 2024, Plaintiff moved to strike certain affirmative defenses Westfield raised in its answer (Doc. 143), to

2

which Westfield responded in opposition.  (Doc. 148.)  Then, on November 18, 2024, Westfield filed a motion for summary judgment (Doc. 151) and Plaintiff filed a motion for partial summary judgment (Doc. 153).  Plaintiff responded in opposition to Westfield's motion for summary judgment (Doc. 176), and Westfield replied in support (Doc. 179).  Westfield responded in opposition to Plaintiff's motion for partial summary judgment (Doc. 174), and Plaintiff replied in support (Doc. 181).  Plaintiff's motion to strike and both Parties' motions for summary judgment have been fully briefed and are ripe for the Court's review.

## B. Factual Background

The Underlying Lawsuit arose out of an incident involving two of Plaintiff's employees at the Bojangles restaurant located in Augusta, Georgia and operated by Plaintiff ("Bojangles").  (Doc. 1-1, at 4-5.)  According to the underlying complaint, Nicholas McLamore, a manager or supervisor at Bojangles, "forcibly raped[] and engaged in other illegal and inappropriate sexual misconduct against" D.W., a minor, while the two were working an evening shift on June 28, 2021.  (Id. at 4-6.)  The underlying complaint also alleges other employees knew McLamore had engaged in similar conduct against other minors employed by Plaintiff.  (Id. at 6.)

D.W. recorded her recollection of the June 28, 2021 incident on an iPhone note, which she corroborated and expanded on in her later statements to police and in her deposition.  (See Doc. 153-

7, at 167-99; Doc. 153-9.)  According to the note, on the night of the incident McLamore instructed D.W. to clean the bathrooms around 9:30 p.m..  (Doc. 153-9, at 2.)  He then followed her into one of the stalls, locked the door, slid her phone across the floor, and began undressing D.W. and himself while kissing D.W.'s neck.  (Id.; Doc. 153-7, at 177.)  D.W. told McLamore to stop, and he left the bathroom.  (Doc. 153-9, at 2.)  The interaction lasted about two minutes.  (Doc. 153-7, at 180.)  About fifteen minutes later, McLamore decided to check D.W.'s work in the bathrooms.  (Doc. 153-9, at 2.)  Despite D.W.'s efforts to hold the bathroom door open during the check to avoid being alone with him, McLamore shut the door, removed D.W.'s pants, and forcibly raped her.  (Id.) During this second interaction, the two were in the bathroom for about six minutes.  (Doc. 153-7, at 198.)  Prior to the incident, D.W. had worked two or three shifts with McLamore.  (Id. at 142, 144, 149-52.)  She considered McLamore a friend and had exchanged non-work-related text messages and snapchats with him several times.  (Id.)

At the time of this incident, Plaintiff maintained a commercial general liability insurance policy with Westfield, Policy No. BOP 0 140 04J (the "Westfield Policy").  (Doc. 175, at 4-5.)  The Westfield Policy contained both a Businessowners Liability Coverage Form (the "BLC Form") and a Commercial Liability Umbrella Coverage Form (the "CLUC Form").  (Id. at 5.)  The BLC

Form includes coverage for any "bodily injury" caused by an "occurrence" that takes place during the policy period, as well as coverage for any "personal and advertising injury" caused by any "offense" arising out of Plaintiff's business that takes place during the policy period. (Doc. 153-4, at 169, 184, 410.) The CLUC Form includes "Coverage A," which applies to any "bodily injury" caused by an "occurrence" that takes place in the United States during the policy period, and "Coverage B," which applies to "personal and advertising injury" "caused by an offense arising out of [Plaintiff's] business but only if the offense was committed . . . during the policy period." (Id. at 396, 401-02.) Coverages A and B of the CLUC Form provide coverage when the underlying insurance (namely, the BLC Form) does not provide coverage or its limits have been exhausted. (Id. at 387, 396, 401.)

Both the BLC and the CLUC Forms define "bodily injury" as "bodily injury," with the CLUC Form also including "disability" in its definition. (Id. at 183, 419.) The BLC and CLUC Forms define "personal and advertising injury" as "injury, including consequential 'bodily injury', arising out of . . . [f]alse arrest, detention or imprisonment[.] . . ." (Id. at 185, 412.) Finally, the BLC and CLUC Forms define "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions," though "accident" is not defined. (Id. at 184, 412.)

5

Both the BLC and CLUC Forms also include the following identical exclusions:

**Workers' Compensation And Similar Laws**
This insurance does not apply to . . . [a]ny obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

(the "Workers Compensation Exclusions"). (Id. at 172-73, 398.)

**Employer's Liability**
This insurance does not apply to . . . "[b]odily injury" to:
(1)  An "employee" of the insured arising out of and in the course of:
    (a) Employment by the insured; or
    (b) Performing duties related to the conduct of the insured's business . . . .

(the "Employer's Liability Exclusions"). (Id.)

**Employment-Related Practices**
This insurance does not apply to . . . "bodily injury" or "personal and advertising injury" to:
(1) A person arising out of any;
    (a) Refusal to employ that person;
    (b) Termination of that person's employment; or
    (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person . . . .

(the "Employment-Related Practices Exclusions"). (Id. at 208, 398, 403.)

And, finally, the BLC Form, but not the CLUC Form, contains the following exclusion:

6

**Abuse or Molestation Exclusion**
This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of:
(a) The actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured, or
(b) The negligent:
    (i) Employment;
    (ii) Investigation;
    (iii) Supervision;
    (iv) Reporting to the proper authorities, or failure to so report; or
    (v) Retention;
    of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by (a) above.

(the "Abuse or Molestation Exclusion"). (Id. at 211.)

## II. MOTION TO STRIKE

The Court first addresses Plaintiff's motion to strike certain affirmative defenses in Westfield's answer to the amended complaint. (Doc. 143.)

## A. Legal Standard

Federal Rule of Civil Procedure 12(f) provides that "the court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). "A defense is insufficient as a matter of law if, on the face of the pleadings, it is patently frivolous[,] or if it is clearly invalid as a matter of law." Anchor Hocking Corp. v. Jacksonville Elec. Auth., 419 F. Supp. 992, 1000 (M.D. Fla. 1976) (citations omitted). Generally, motions to strike are

disfavored and "will usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." Carlson Corp./Se. v. Sch. Bd. of Seminole Cnty., 778 F. Supp. 518, 519 (M.D. Fla. 1991) (citations omitted). Therefore, affirmative defenses should be stricken only when they are insufficient on the face of the pleadings. See Anchor Hocking Corp., 419 F. Supp. at 1000.

When the sufficiency of the defense depends on disputed issues of fact or questions of law, a motion to strike an affirmative defense should not be granted. See United States v. Marisol, Inc., 725 F. Supp. 833, 836 (M.D. Pa. 1989). Indeed, "[a]n affirmative defense will be held insufficient as a matter of law only if it appears that the defendant cannot succeed under any set of facts which it could prove." Reyher v. Trans World Airlines, Inc., 881 F. Supp. 574, 576 (M.D. Fla. 1995) (citing Equal Emp't Opportunity Comm'n v. First Nat'l Bank, 614 F.2d 1004, 1008 (5th Cir. 1980)). Moreover, "affirmative defenses which fail to satisfy [Federal Rule of Civil Procedure] 8(b) should be stricken if they fail to include more than bare-bones conclusory allegations." Luxottica Grp., S.p.A. v. Airport Mini Mall, LLC, 186 F. Supp. 3d 1370, 1374-75 (N.D. Ga. 2016) (citations omitted). However, if an affirmative defense is stricken on technical grounds, the defendant may still argue its substantive merits later. Id. at 1375.

**B. Discussion**

Plaintiff argues the twelfth through fifteenth defenses asserted in Westfield's operative answer should be stricken because they are "impertinent, immaterial, and inconsistent with this Court's August 19, 2024 Order." (Doc. 143, at 1.) Westfield opposes the motion, arguing the defenses at issue are sufficiently pled. (Doc. 148, at 4.)

Plaintiff argues the twelfth, thirteenth, and fourteenth defenses each should be stricken on various grounds. (Doc. 143, at 5-9.) Westfield disagrees, arguing the Court's August 19, 2024 Order recognizes these defenses are "relevant to any potential recovery by the Parties." (Doc. 148, at 4-6 (quoting Doc. 137, at 16).) The twelfth defense asserts recovery in this action may be limited based on the terms of the Agreement, largely mirroring the factual basis provided in Westfield's proposed amendment. (Doc. 141, at 24-25; see Doc. 128-1, at 1-4.) The next two defenses provide:

> THIRTEENTH DEFENSE
> Some or all of Plaintiff's claims and alleged damages are barred or subject to reduction based on contractual limitation of claims and damages or set off pursuant to the Agreement reached between Westfield and [Plaintiff] at the Mediation on December 15, 2023.
>
> FOURTEENTH DEFENSE
> Some or all of Plaintiff's claims and alleged damages are barred or subject to reduction based on the Parties settlement of claims at the Mediation on December 15, 2023.

(Doc. 141, at 26.)

The Court's August 19, 2024 Order granted Westfield's motion to amend to the extent it sought to add these facts as a partial defense, providing "the factual allegations concerning the Agreement are relevant to any potential recovery . . . [and] could provide a partial defense to any potential recovery by Plaintiff from Westfield." (Doc. 137, at 16.) Further, while set-off and recoupment are generally counterclaims, Steinberg v. St. Paul Mercury Ins., 108 F.R.D. 355 (S.D. Ga. 1985), the Court noted in its August 19, 2024 Order that the Agreement is more akin to "a contract limiting recovery and damages," and, as such, may provide a partial defense. (Doc. 137, at 15-16.) Thus, given the nature of the Agreement, the Court finds its effects on recovery are extraneous to Plaintiff's *prima facie* case and, therefore, Westfield's assertions are properly brought as affirmative defenses. Luxottica, 186 F. Supp. 3d at 1374 ("An affirmative defense raises matters extraneous to the plaintiff's *prima facie* case that can defeat a claim." (citation and internal quotation marks omitted)). Thus, in accordance with the Court's August 19, 2024 Order, Plaintiff's motion to strike the twelfth, thirteenth, and fourteenth defenses is **DENIED.**

Plaintiff also argues the fifteenth defense should be stricken because it is untimely and frivolous. (Doc. 143, at 7.) Westfield argues the defense is properly asserted because "breach

10

is certainly impending or there is a substantial risk of breach based on Plaintiff's position with respect to the Agreement." (Doc. 148, at 7.)    The fifteenth defense states, "No coverage exists under the Westfield Policy and Plaintiff's failure to reimburse Westfield the amount of $1,625,000.00 is a failure to comply with Plaintiff's cross-obligation or independent covenant arising under the Agreement between Westfield and Plaintiff reached at the Mediation on December 15, 2023." (Doc. 141, at 26.)    In its August 19, 2024 Order, the Court denied Westfield's substantively similar proposed amendment as untimely, reasoning that no breach had yet occurred, so the motions were not ripe. (Doc. 137, at 12-13.)    Because this posture has not changed, Plaintiff's motion to strike the fifteenth defense is **GRANTED**.

Based on the foregoing, Plaintiff's motion to strike (Doc. 143) is **GRANTED IN PART**, and the fifteenth defense is **STRICKEN** from Westfield's answer (Doc. 141).    The remainder of Plaintiff's motion to strike certain affirmative defenses (Doc. 143) is **DENIED**.

### III. MOTIONS FOR SUMMARY JUDGMENT

Also pending before the Court are Westfield's motion for summary judgment (Doc. 151) and Plaintiff's motion for partial summary judgment (Doc. 153).    The Court first provides the applicable legal standard and then addresses the motions for summary judgment.

In this action, the Clerk of Court gave both Parties notice of the motions for summary judgment and informed them of the summary judgment rules, the right to file affidavits or other materials in opposition, and the consequences of default.  (Docs. 152, 154.)  For that reason, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam), are satisfied.  The time for filing materials in opposition has expired, the issues have been thoroughly briefed, and the motion is now ripe for consideration.

## A. Legal Standard

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  Facts are "material" if they could "affect the outcome of the suit under the governing [substantive] law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and a dispute is genuine "if the nonmoving party has produced evidence such that a reasonable factfinder could return a verdict in its favor," Waddell v. Valley Forge Dental Assocs., Inc., 276 F.3d 1275, 1279 (11th Cir. 2001) (citation omitted).  The court must view factual disputes in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and must draw "all justifiable inferences in [the nonmoving party's] favor," United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th

12

Cir. 1991) (en banc) (internal punctuation and citations omitted). The court should not weigh the evidence or determine credibility. <u>Anderson</u>, 477 U.S. at 255.

The moving party has the initial burden of showing the court, by reference to materials on file, the basis for the motion. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). Because the standard for summary judgment mirrors that of a directed verdict, the initial burden of proof required by either party depends on who carries the burden of proof at trial. <u>Id.</u>

"When the moving party has the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact: it 'must support its motion with credible evidence that would entitle it to a directed verdict if not controverted at trial.'" <u>Four Parcels of Real Prop.</u>, 941 F.2d at 1438 (emphasis omitted and alteration adopted) (quoting <u>Celotex Corp.</u>, 477 U.S. at 331 (Brennan, J., dissenting)). "If the moving party makes such an affirmative showing, it is entitled to summary judgment unless the nonmoving party, in response, 'comes forward with significant, probative evidence demonstrating the existence of a triable issue of fact.'" <u>Id.</u> (quoting <u>Chanel, Inc. v. Italian Activewear of Fla., Inc.</u>, 931 F.2d 1472, 1477 (11th Cir. 1991)).

When the non-movant has the burden of proof at trial, the movant may carry the initial burden in one of two ways — by negating an essential element of the non-movant's case, or by showing that

there is no evidence to prove a fact necessary to the non-movant's case. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). Before the Court can evaluate the non-movant's response in opposition, it must first consider whether the movant has met its initial burden of showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Jones v. City of Columbus, 120 F.3d 248, 254 (11th Cir. 1997) (per curiam). A mere conclusory statement that the non-movant cannot meet the burden at trial is insufficient. Clark, 929 F.2d at 608. If — and only if — the movant carries its initial burden, the non-movant may avoid summary judgment only by "demonstrat[ing] that there is indeed a material issue of fact that precludes summary judgment." Id. When the non-movant bears the burden of proof at trial, the non-movant must tailor its response to the method by which the movant carried its initial burden. Fitzpatrick, 2 F.3d at 1116. If the movant presents evidence affirmatively negating a material fact, the non-movant "must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated." Id. If the movant shows an absence of evidence on a material fact, the non-movant must either show that the record contains evidence that was "overlooked or ignored" by the movant or "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary

deficiency." Id. at 1116-17. The non-movant cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. See Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981). Rather, the non-movant must respond with affidavits or as otherwise provided by Federal Rule of Civil Procedure 56.

## B. Westfield's Motion for Summary Judgment

Westfield's motion for summary judgment seeks declaratory judgment that: (1) there is no coverage, duty to indemnify, or duty to defend under the BLC Form; (2) there is no coverage, duty to indemnify, or duty to defend under the CLUC Form; (3) Plaintiff's recovery is limited to the amount stated in the Agreement; (4) because there is no coverage under the Westfield Policy, Plaintiff's failure to reimburse Westfield in accordance with the terms of the Agreement triggers Westfield's right to recover; and (5) Plaintiff's claims for bad faith and attorney's fees under O.C.G.A. § 33-4-6 fail as a matter of law. (Doc. 151, at 2-3.) Plaintiff argues Westfield's motion should be denied. (Doc. 176.)

### 1. Coverage Under the Westfield Policy

Westfield argues there is no coverage, duty to indemnify, or duty to defend under the BLC Form based on the Abuse or Molestation Exclusion, the Employer's Liability Exclusion, the Workers' Compensation Exclusion, and the Employment-Related Practices

15

Exclusion. (Doc. 151, at 1-2.) Westfield also argues there is no coverage, duty to indemnify, or duty to defend under the CLUC form based on the Employer's Liability Exclusion, the Workers' Compensation Exclusion, and the Employment-Related Practices Exclusion. (Id. at 2.) The Court will address whether the Abuse and Molestation Exclusion, which is only included in the BLC Form, applies, before turning to whether the other exclusions, which modify both the BLC and CLUC Forms, apply. First, however, the Court provides the legal standard for insurance contract interpretation in Georgia.

a. *Insurance Contract Legal Standards*

Under Georgia law, contract construction "is a question of law for the court." Am. Empire Surplus Lines Ins. v. Hathaway Dev. Co., 707 S.E.2d 369, 371 (Ga. 2011) (citation omitted). Consistent with the general rule governing contract interpretation, construction of an insurance contract is a question of law. Elan Pharm. Rsch. Corp. v. Emp'rs Ins. of Wausau, 144 F.3d 1372, 1375 (11th Cir. 1998). Accordingly, "the parties to the contract of insurance are bound by its plain and unambiguous terms." Hurst v. Grange Mut. Cas. Co., 470 S.E.2d 659, 663 (Ga. 1996) (citation omitted). "Words used in the policy are given their usual and common meaning, and the policy should be read as a layman would read it and not as it might be analyzed by an insurance expert or an attorney." Liberty Surplus Ins. v. Norfolk

16

S. Ry. Co., 684 F. App'x 788, 790 (11th Cir. 2017) (citation omitted and alterations adopted). An insurance company may "fix the terms of its policies as it sees fit, so long as they are not contrary to the law," and it is "free to insure against certain risks while excluding others." Ga. Farm Bureau Mut. Ins. v. Smith, 784 S.E.2d 422, 424 (Ga. 2016) (citations and internal quotation marks omitted).

Under Georgia law, an insurer's refusal to defend is justified if the complaint "does not assert any claims upon which there would be insurance coverage." City of Atlanta v. St. Paul Fire & Marine Ins., 498 S.E.2d 782, 784 (Ga. Ct. App. 1998) (citing Great Am. Ins. v. McKemie, 259 S.E.2d 39, 40-41 (Ga. 1979)). Any doubt as to an insurer's duty to defend "should be resolved in favor of the insured." Penn-Am. Ins. v. Disabled Am. Veterans, Inc., 490 S.E.2d 374, 376 (Ga. 1997) (citations omitted); see Elan Pharm., 144 F.3d at 1375 ("[A]n insurer must provide a defense against any complaint that, if successful, might potentially or arguably fall within the policy's coverage."). To succeed at summary judgment on the issue of duty to defend, an insurer must show the terms of the policy "unambiguously exclude coverage." BBL-McCarthy, LLC v. Baldwin Paving Co., 646 S.E.2d 682, 685 (Ga. Ct. App. 2007) (quoting Penn-Am. Ins., 490 S.E.2d at 376). Additionally, "Georgia law does not permit an insurer to rely on the allegations of the complaint to deny coverage when the facts that the insurer knows or can

17

ascertain show the claim is within the coverage of the policy." Elan Pharm., 144 F.3d at 1377 n.6.

The duty to indemnify is a distinct and separate obligation from the duty to defend. See City of Atlanta, 498 S.E.2d at 785. "[T]he duty to indemnify . . . is determined by the 'true facts' as they are established in the underlying litigation," rather than the allegations in the underlying complaint. CSX Transp., Inc. v. Gen. Mills, Inc., No. 1:14-CV-201, 2018 WL 3458557, at *4 (N.D. Ga. July 18, 2018). "An insurer's duty to defend is broader than its duty to indemnify." Allstate Ins. v. Airport Mini Mall, LLC, 265 F. Supp. 3d 1356, 1366 (N.D. Ga. 2017). As such, the absence of a duty to defend necessarily means there is no duty to indemnify. Nat'l Cas. Co. v. Pickens, 582 F. App'x 839, 841 (11th Cir. 2014).

Under Georgia law, the first question when interpreting an insurance contract is whether the terms contained in a policy's exclusions are unambiguous: "Where the contractual language is explicit and unambiguous, 'the court's job is simply to apply the terms of the contract as written, regardless of whether doing so benefits the carrier or the insured.'" Jones v. Golden Rule Ins., 748 F. App'x 861, 864 (11th Cir. 2018) (quoting Smith, 784 S.E.2d at 424). As such, in determining whether the relevant terms are unambiguous, the Court looks to the text of the policies. Smith, 784 S.E.2d at 424 (citation omitted).

18

b. *Abuse or Molestation Exclusion*

Westfield argues D.W.'s injuries fall within the BLC Form's Abuse or Molestation Exclusion, which excludes any covered injury "arising out of . . . the actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured." (Doc. 151-1, at 11-13; Doc. 153-4, at 211.) Plaintiff argues this exclusion does not apply because some of D.W.'s injuries arose out of her being falsely imprisoned and because she was not in the "care, custody or control" of Plaintiff. (Doc. 176, at 2-7.) Westfield argues the injuries arose out of a discrete incident of sexual assault and under the plain meaning of the phrase "care, custody or control," the exclusion applies. (Doc. 179, at 3-8.)

Under Georgia law, the phrase "arising out of" has been interpreted to require some causal connection akin to "but for" causation. See Barrett v. Nat'l Union Fire Ins. of Pittsburgh, 696 S.E.2d. 326, 332 (Ga. Ct. App. 2010). Materially similar exclusions have been found applicable when, for example, a special needs child was physically and emotionally tormented while in a caregiver's custody, as well as when a cruise ship passenger was sexually assaulted by an employee who offered to escort her to the bathroom but detained and raped her in a small room of a nearby shopping center. See Am. Empire Surplus Lines Ins. v. Chabad House of N. Dade, Inc., 771 F. Supp. 2d 1336, 1337-38 (S.D. Fla.), *aff'd*,

450 F. App'x 792 (11th Cir. 2011); <u>Doe v. Ins. of the State of Pennsylvania</u>, 363 F. Supp. 3d 1358 (S.D. Fla. 2018).[2]

Plaintiff argues D.W. suffered injuries that "arose out of" her false imprisonment and detention, rather than the sexual assault, because McLamore locked her in the bathroom. (Doc. 176, at 3-5.) Plaintiff primarily relies on <u>Guideone Elite Ins. Co. v. Old Cutler Presbyterian Church, Inc.</u>, 420 F.3d 1317 (11th Cir. 2005) for this assertion. (<u>Id.</u> at 5.) The underlying incident in <u>Guideone</u> involved the following series of events: a perpetrator, to gain access to a woman's vehicle, tackled the woman and her small child, forced them into her vehicle, and threatened them both with a knife. 420 F.3d at 1320-21. After demanding the woman's jewelry and money, the perpetrator forced the woman to perform oral sex on him while he drove her car, with her children in it, to several banks so she could withdraw more money for him. <u>Id.</u> at 1321-22. After the bank visits, he again forced the woman to perform oral sex, and then drove to a wooded area and raped her before driving back to the area where the abduction occurred, returning her wedding ring, and fleeing. <u>Id.</u> at 1322. The perpetrator physically beat and threatened the woman and her

---

[2] Both Parties and the Court rely principally on cases applying Florida law as there seems to be a lack of Georgia law interpreting materially similar exclusions. (<u>See</u> Doc. 153-1, at 19-21; Doc. 151-1, at 12-13.) Although under Florida law the phrase "arising out of" has been interpreted to mean "'having its origin in,' 'growing out of,' 'flowing from,' 'incident to' or 'having a connection with,'" rather than as requiring "but for" causation, the decisions are nonetheless guiding to the Court's analysis. <u>Chabad</u>, 771 F. Supp. 2d at 1340.

children several times throughout these events, including during the sexual acts. Id. at 1321-22. The relevant insurance contract excluded coverage for injuries "arising out of sexual misconduct," and the court held that whether the woman's injuries from assault and battery were excluded under this provision turned on the timing. Id. at 1329. The many non-sexual injuries that occurred independent of the sexual acts were not excluded from coverage. Id. The injuries incurred during the sexual acts, on the other hand, were intertwined with the sexual misconduct and thus the exclusion's applicability turned on the perpetrator's purpose. Id.

The Court finds Guideone does not control this case for several reasons. First, the relevant policy exclusion in Guideone was for injuries arising out of "sexual misconduct," a notably narrower exception than the one here which applies to injuries arising out of "abuse or molestation." See id. at 1326; (Doc. 153-4, at 211.) Additionally, the facts here materially differ from those in Guideone. Unlike in Guideone, any false imprisonment of D.W. was clearly "connected" with, and incidental to, the sexual assault. See 420 F.3d at 1328. The record provides undisputed evidence that McLamore's purpose and motivation was to sexually assault and rape D.W.. (See Doc. 153-7, at 198; Doc. 153-8, at 49-50; Doc. 153-9.) Namely, both times McLamore shut the bathroom door, he immediately began undressing and touching D.W.

21

inappropriately, and he had sent several text messages to D.W. evidencing his sexual interest in her. (Doc. 153-9; Doc. 153-8, at 49-50.) Further, unlike the perpetrator in Guideone, McLamore did not steal from, beat, or hold D.W. captive for an extended period; rather, he detained her in the bathroom only long enough to inappropriately touch and rape her, and then immediately left, leaving her free to leave as well. (Doc. 153-9; Doc. 153-7, at 180, 198.) Moreover, D.W. did not allege or otherwise claim to have suffered injuries arising from any acts by McLamore other than the sexual misconduct. (See Doc. 153-14); compare Cincinnati Ins. v. Markel Am. Ins., No. CV 307-168, 2008 WL 2415248 (S.D. Miss. June 11, 2008) (finding an abuse or molestation exclusion did not apply under North Carolina law when the victim made separate allegations of injuries resulting from her false detention and rape in the underlying complaint). Thus, the Court finds D.W.'s injuries arose out of abuse or molestation by McLamore.

Plaintiff also argues this exclusion does not apply because D.W. was not in the "care, custody or control" of Plaintiff. (Doc. 153-1, at 22-23.) Neither this phrase, nor the individual words, are defined in the Westfield Policy. (See Doc. 153-4.) Looking to case law interpreting this phrase, the three words, as written in the Abuse or Molestation Exclusion, are connected by the disjunctive "or" meaning they are to be read separately. See

22

*Valley Forge Ins. v. Field*, 670 F.3d 93, 99 (1st Cir. 2012). Moreover, in interpreting this phrase other circuits have found strict interpretations requiring "physical dominion and control" or "exclusive control" inapplicable when dealing with persons rather than property. *Id.* at 99-100 ("[T]he use of the word 'care' in relation to a physical object is necessarily much different from the use of the same term in relation to a child receiving medical or therapeutic services." (citation omitted)).

Bearing this in mind, the Court looks to the dictionary to determine the plain and generally accepted meaning of each word. *See* Alea London Ltd. v. Lee, 649 S.E.2d 542, 544 (Ga. Ct. App. 2007). A Florida court, in doing the same, found the following:

> "Care" refers to the "conduct" or "function" of a party with obligations towards another. *Care*, MERIAM-WEBSTER DICTIONARY ("Webster's"), https://www.merriam-webster.com/dictionary/care (last visited September 20, 2018); *see also* *Care*, BLACK'S LAW DICTIONARY (10th Ed. 2014). "Custody," refers to "guarding" or "control" of a person for specific purposes. *Custody*, WEBSTER'S, https://www.merriam-webster.com/dictionary/custody (last visited September 20, 2018); *see also* *Custody*, BLACK'S LAW DICTIONARY (10th Ed. 2014). And finally, "control" refers to "power" or "influence" over another. *Control*, WEBSTER'S, https://www.merriam-webster.com/dictionary/custody (last visited September 20, 2018); *see also* *Control*, BLACK'S LAW DICTIONARY (10th Ed. 2014).

*Doe*, 363 F. Supp. 3d at 1366-67. "In the care of," when used in this context, has also been defined to include "charge, supervision, management: responsibility for or attention to safety

and well-being." Valley Forge, 670 F.3d at 99 (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 338 (1993)).

The Court finds D.W., an employee of Plaintiff, was under both the "care" and "control" of Plaintiff during the incident. In considering the plain meaning of the term "care," an employer is in charge of, supervises, and manages its employees. Valley Forge, 670 F.3d at 99. Similarly, under the plain meaning of the term "control," an employer has "control," or "influence," over its employees. See Georgia Insurers Insolvency Pool v. LogistiCare Sols., LLC, 912 S.E.2d 91, 95 (Ga. Ct. App. 2025) (explaining that, under Georgia law, the existence of an employer-employee relationship turns on the employer's degree of *control* over the time, manner, and method in which the work is performed). That D.W. was a teenager and "free to leave," as Plaintiff argues, does not change the analysis, as courts have found adults may still be in the "care, custody or control" of a business. See Doe, 363 F. Supp. 3d at 1366-67 (finding an adult cruise patron was under the "care, custody or control" of the cruise line).

In sum, based on both the allegations in the underlying complaint and the true facts as shown in the record, the Court finds D.W.'s injuries arose out of abuse or molestation and D.W. was within the "care, custody or control" of Plaintiff when those injuries were incurred. Thus, the Abuse or Molestation Exclusion applies, and there is no coverage under the BLC Form, Westfield

has no duty to indemnify under the BLC Form, and Westfield did not breach its duty to defend under the BLC Form by not providing a defense in the Underlying Lawsuit.

### c. *Employer's Liability Exclusions*

Westfield next argues there is no coverage under either the BLC or CLUC Forms under the Employer's Liability Exclusions. (Doc. 151-1, at 13-14.) Specifically, Westfield contends that "[b]ecause D.W.'s injuries occurred while she was performing duties related to the conduct of [Plaintiff]'s business, there can be little question that D.W.'s injuries arose out of and in the course of her employment." (Id. at 14; Doc. 179, at 12-14.) Plaintiff disagrees, arguing D.W.'s injuries did not arise out of her employment because they were not a foreseeable risk of her job. (Doc. 176, at 8.)

Under the Employer's Liability Exclusions, coverage does not extend to injuries "arising out of and in the course of . . . employment." (Doc. 154-3, at 172-73, 398.) Under Georgia law, "[t]he terms 'arising out of' and 'in the course of' are not synonymous." Murphy v. ARA Servs., Inc., 298 S.E.2d 528, 530 (Ga. Ct. App. 1982) (citations omitted). "An injury arises in the course of employment when it occurs within the period of the employment, at a place where the employee may be in the performance of his duties, and while he is fulfilling those duties or engaged in doing something incidental thereto." Id. (citations omitted

and alterations adopted).[3] An injury "arises out of" employment, on the other hand, only "when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury." Id.

To arise out of employment, "the causative danger must be peculiar to the work" such that the injury is a "natural incident of the work." Id.; compare Tyson v. Scottsdale Indem. Co., 805 S.E.2d 138, 141 (Ga. Ct. App. 2017) (finding a causal connection between work conditions and injury when an employee whose job was to remove limbs and debris after trees were cut down was struck by a branch that fell during tree-cutting) with Murphy, 298 S.E.2d at 530-31 (refusing to find that risk of sexual abuse "belong[ed] to or [was] in any way connected with" the victim's responsibilities as a cafeteria worker) and Kennedy v. Pineland State Bank, 439 S.E.2d 106, 107 (Ga. Ct. App. 1993) (finding sexual assault of a bank employee by board member to whom she was showing the bank vault did not arise out of any condition of her employment). Generally, because sexual harassment injuries arise from "the willful act[s] of a third person for personal reasons," Murphy,

---

[3] While Murphy analyzed a worker's compensation exclusion, Georgia courts apply the same analysis to general liability exclusions. See generally Tyson v. Scottsdale Indem. Co., 805 S.E.2d 138, 140-41 (Ga. Ct. App. 2017) (applying the analysis used for workers' compensation exclusions to a general liability exclusion); SCI Liquidating Corp. v. Hartford Ins., 526 S.E.2d 555, 557 (Ga. 2000) ("[T]he same reasoning used in workers' compensation cases has been held to be applicable to general liability cases.").

298 S.E.2d at 531, such claims are "construed under Georgia law as not having 'arisen out of employment,'" SCI Liquidating, 526 S.E.2d at 294.

The Court finds D.W.'s injuries did not arise out of her employment or duties thereof. D.W.'s injuries certainly occurred in the course of her employment, as she was at work and engaged in a work-related duty - cleaning the restrooms - when the injuries occurred. (Doc. 175, at 3-4.) However, "[i]t is a settled rule that an injury may arise in the course of the employee's employment and yet not arise out of his employment." Murphy, 298 S.E.2d at 530 (citation omitted). Here, like in other sexual harassment and sexual assault cases, there was nothing peculiar about working in a fast-food restaurant, or, more particularly, cleaning the bathrooms, that made getting sexually assaulted or raped particularly likely or foreseeable. The mere fact that D.W.'s job placed her around McLamore is not enough to find such a causal connection. Id. at 531 (finding "exposure to the person of the supervisor in his capacity as her superior is not dispositive" in determining whether sexual harassment arose out of employment). Thus, the Court finds D.W.'s injuries were not a natural, foreseeable incident of her work, but rather the result of McLamore's willful, personally motivated actions. Under both the allegations in the underlying complaint and the facts on the record, the Court finds D.W.'s injuries do not fall under the

Employer's Liability Exclusions.   Thus, the Employer's Liability Exclusions do not bar coverage.

          d. *Workers' Compensation Exclusions*

    Next, Westfield argues coverage is barred by the BLC or CLUC Forms' Workers' Compensation Exclusions because the Workers' Compensation Act ("WCA") applies to D.W.'s injuries and thus is the exclusive remedy.   (Doc. 151-1, at 15-18.)   Plaintiff argues this exclusion does not apply because Bojangles does not owe any "obligation" to D.W. under the WCA and because the WCA does not apply to D.W.'s injuries.   (Doc. 176, at 9-12.)

    Like the Employer's Liability Exclusions, applicability of the Workers' Compensation Exclusions turns on whether D.W.'s injuries "arise out of" her employment.   (*See* Doc. 151-1, at 15-18; Doc. 176, at 9-12; Doc. 179, at 14-17.)   Under Georgia law, the analysis is the same under both exclusions.   See <u>supra</u> note 2. Nonetheless, the Court addresses several additional cases Westfield relies on with respect to the Workers' Compensation Exclusions.   Westfield first points to <u>Sturgess v. OA Logistics Servs., Inc.</u>, 784 S.E.2d 432, 437 (Ga. Ct. App. 2016), to argue that under the positional risk doctrine D.W.'s injuries arose out of her employment.   (Doc. 151-1, at 17.)   However, the court in <u>Sturgess</u> expressly distinguished the facts before it from situations involving sexual assault, noting that application of

the positional risk doctrine in such cases would conflict with public policy.  784 S.E.2d at 437 n.17.

Next, Westfield points to several cases where sexual assault injuries were found to have arisen out of employment conditions. (Doc. 151-1, at 15-18.)  However, these cases are distinguishable for two reasons: first, each dealt with conditions of employment that were "peculiarly conducive" to an attack, and second, each dealt with a "random" attacker with whom the victim had no prior relationship.  See Macy's South, Inc. v. Clark, 452 S.E.2d 530, 531-32 (Ga. Ct. App. 1994) (finding attack arose out of employment when the attacker was a random man and employer encouraged employees to park in an unsecure, public garage late at night); Helton v. Interstate Brands Corp., 271 S.E.2d 739, 740-41 (Ga. Ct. App. 1980) (finding attack arose out of employment when victim had no prior relationship with attacker and job required employee to walk through parking lot in a high crime area at dark); Dawson v. Wal-Mart Stores, Inc., 751 S.E.2d 426, 430-31 (Ga. Ct. App. 2013) (finding attack arose out of employment when victim and attacker were unknown to each other and job required employee to walk through a public parking lot during dark, early morning hours). Here, as discussed above, there were no conditions of D.W.'s employment making the environment peculiarly conducive to an attack.  Cleaning a bathroom located inside one's place of employment is different than walking through a dark, unsecure,

public parking lot in a high crime area, and Georgia courts have recognized both scenarios carry different degrees of risk of being attacked by a random stranger. See Kennedy, 439 S.E.2d at 107 (finding working in a bank and escorting superior to a secluded vault did not amount to conditions peculiarly conducive to sexual assault).

Further, the facts show D.W.'s attack was personal, not random. In cases where, as here, the attacker was a workplace superior who knew the victim prior, rather than a random stranger, sexual assaults have been found to be personal. See, e.g., Kennedy, 439 S.E.2d at 107; Murphy, 298 S.E.2d at 531; Rogers v. Carmike Cinemas, Inc., 439 S.E.2d 663, 665 (Ga. Ct. App. 1993). Even beyond his status as D.W.'s superior at work, the record shows D.W. and McLamore also knew each other outside of work, evidenced by their exchange of text messages and Snapchat communications. (Doc. 153-7, at 149-161.) Nor is there any evidence the incident stemmed from a work-related dispute, which may otherwise bring the resulting injuries within the scope of the exclusion despite the existence of a prior relationship. See Brady v. Harris Ventures, Inc., No. 121CV1649, 2022 WL 22288532, at *15-16 (N.D. Ga. Jan. 10, 2022), report and recommendation adopted, 2022 WL 22288351, at *4 (N.D. Ga. Feb. 3, 2022) (distinguishing between situations when sexual harassment by coworkers stems from reasons related to work performance versus when it is personally motivated). Thus, the

Workers' Compensation Exclusions, like the Employer's Liability Exclusions, do not apply because D.W.'s injuries, as alleged in the underlying complaint and as shown in the record, did not arise out of her employment.[4]

### e. *Employment-Related Practices Exclusions*

Finally, Westfield argues there is no coverage, duty to defend, or duty to indemnify under the Employment-Related Practices Exclusions in the BLC and CLUC Forms, relying on Tyson and Sturgess to argue D.W.'s injuries arose out of Plaintiff's employment-related practices - namely, its managers' failure to report sexual harassment. (Doc. 151-1, at 18-19; Doc. 179, at 17-19.) Plaintiff again argues McLamore's conduct did not arise out of an employment-related act or omission because it was personal and unconnected to Plaintiff's business. (Doc. 176, at 13-14.) Plaintiff further argues the exclusion is ambiguous and should be construed against Westfield. (Id. at 14-16.)

The Court finds Westfield has not carried its burden, as the Court already distinguished Tyson and Sturgess from the present facts. See Tyson, 805 S.E.2d at 373-74 (dealing with an injury resulting from a fallen tree); Sturgess, 784 S.E.2d at 437 n.17 (distinguishing sexual assault situations from the facts there).

---

[4] Because the Court finds D.W.'s injuries did not arise out of her employment and, thus, the Workers' Compensation Exclusions do not apply, it refrains from addressing Plaintiff's argument that there is no "obligation" because no claim was ever brought under the WCA. (Doc. 176, at 9-10.)

Moreover, while Georgia courts have not ruled on the applicability of employment-related practices exclusions in the context of sexual assault by a superior at work, other courts in this Circuit have found such exclusions do not apply because a supervisor's sexual assault or harassment of an employee is "purely personal." See Childersburg, 1998 WL 1802908, at *3 (finding the exclusion did not bar coverage because sexual harassment is "purely personal and not within the scope of one's employment"). This interpretation aligns with Georgia law, which has long recognized that sexual assault and harassment claims are inherently personal. See Murphy, 298 S.E.2d at 531. Thus, for the reasons stated above, the Court finds McLamore's actions were personally motivated and did not arise out of Plaintiff's employment-related practices.

Additionally, to the extent the scope of the Employment-Related Practices Exclusions is ambiguous, the Court will construe any ambiguities against the insurer. Padgett v. Ga. Farm Bureau Mut. Ins., 625 S.E.2d 76, 77 (Ga. Ct. App. 2005) ("Where a term of a policy of insurance is susceptible to two or more constructions, even when such multiple constructions are all logical and reasonable, such term is ambiguous and will be strictly construed against the insurer as the drafter and in favor of the insured." (citations omitted)). In doing so, the Court follows several other district courts in declining to read "sexual assault" into the enumerated list of "practices, policies, acts or omissions"

covered by the exclusion.  See Auto-Owners Ins. v. Childersburg Banccorporation, Inc., No. CV-97-PT-2952, 1998 WL 1802908, at *3 (N.D. Ala. May 27, 1998) (finding the phrase "other employment-related practices, policies, acts or omissions" ambiguous); Soc'y Ins., A Mut. Co. v. Holiday Crown Ctr., LLC, No. 2:22-CV-2767, 2023 WL 11886896, *7 (W.D. Tenn. June 1, 2023) (finding an identical exclusion inapplicable to claims for sexual assault or false imprisonment because they were not explicitly listed).  Thus, the Employment-Related Practices Exclusions do not apply to D.W.'s injuries.

### f. *Conclusion of Coverage Issues*

In sum, Westfield's motion for summary judgment as to coverage under the Westfield Policy is **GRANTED IN PART** and **DENIED IN PART**. The Court finds the BLC Form's Abuse or Molestation Exclusion bars coverage, and Westfield has no duty to defend or duty to indemnify under the BLC Form.  However, the Court finds the BLC and CLUC Forms' Employer's Liability Exclusions, Worker's Compensation Exclusions, and Employment-Related Practices Exclusions do not apply to D.W.'s injuries.  Thus, Plaintiff is entitled to coverage under the CLUC Form, and Westfield has both a duty to defend and duty to indemnify under the CLUC Form.

### 2. Claims for Statutory Bad Faith and Attorneys' Fees

Westfield also seeks a declaration that Plaintiff's claims for statutory bad faith and attorneys' fees should be dismissed

because there is no coverage under the Westfield Policy, Plaintiff failed to make a timely demand, and Westfield's grounds for denying coverage were reasonable.[5]   (Doc. 151-1, at 19-23.)   Plaintiff argues summary judgment should not be granted on this issue because there is coverage under the Westfield Policy, Plaintiff sent two satisfactory demand letters, and Westfield's failure to investigate the underlying claim and refusal to defend supports a finding of bad faith.   (Doc. 176, at 16-24.)

> To prevail on a claim for an insurer's bad faith under
> O.C.G.A. § 33-4-6, the insured must prove: (1) that the
> claim is covered under the policy, (2) that a demand for
> payment was made against the insurer within 60 days prior
> to filing suit, and (3) that the insurer's failure to
> pay was motivated by bad faith.

BayRock Mortg. Corp. v. Chicago Title Ins., 648 S.E.2d 433, 435 (Ga. Ct. App. 2007) (citing O.C.G.A. § 33-4-6).   Thus, to prevail on a bad faith claim, a demand must be made more than sixty days before filing suit and include language "sufficient to alert the insurer that it is facing a bad faith claim for a specific refusal to pay so that it may decide whether to pay the claim."   Id. (quoting Arrow Exterminators, Inc. v. Zurich Am. Ins., 136 F. Supp. 2d 1340, 1356 (N.D. Ga. 2001)).   While no specific language is necessary, the demand must put the insurer on notice that "a bad faith claim will be asserted if the specific loss noted is not

---

[5] Because Westfield failed to move for summary judgment on Plaintiff's common law bad faith claim, the Court disregards any argument on such raised in Westfield's reply in support of its motion for summary judgment.   (See Doc. 151, at 2-3; Doc. 151-1, at 19-23; Doc. 179, at 22-24.)

paid." Arrow Exterminators, 136 F. Supp. 2d at 1356. Because O.C.G.A. § 33-4-6 imposes a penalty on insurers, its requirements must be strictly construed. BayRock, 648 S.E.2d at 435 (citation omitted). As such, "[a] plaintiff's failure to properly satisfy the demand requirement is an absolute bar to recovery of a bad faith penalty and attorneys' fees under the statute." S. Realty Mgmt., Inc. v. Aspen Specialty Ins. Co., No. 108-CV-0572, 2008 WL 4787511, at *2 (N.D. Ga. Oct. 27, 2008) (citations omitted).

For the following reasons, the Court finds Plaintiff is precluded from recovering bad faith penalties and attorneys' fees pursuant to O.C.G.A. § 33-4-6.

As to the first element, for the reasons outlined above, there is coverage under the Westfield Policy. However, turning to the second element, the Court finds Plaintiff's demand letters insufficient. There are three potentially satisfactory demand letters: (1) the February 2, 2022 demand made on Houston (Doc. 176-1; Doc. 74-3, at 12) (the "Houston Demand"); (2) the August 16, 2023 demand to Westfield offering to settle the suit for $10,000,000 (Doc. 175, at 19; Doc. 153-21) (the "August 16 Demand"); and (3) the August 28, 2023 demand to Westfield demanding it accept Plaintiff's settlement offer (Doc. 175, at 19; Doc. 153-22) (the "August 28 Demand"; collectively with the August 16 Demand, the "August Demands"). Westfield argues there was no sufficient, timely demand because the Houston Demand was made

against a wholly different insurer and made before Westfield incurred a legal obligation to pay, and the August Demands were made while the lawsuit was already ongoing. (Doc. 151-1, at 21-23; Doc. 179, at 20-22.) Plaintiff argues the Houston Demand was sufficient because only substantial compliance is required, and both the Houston Demand and the August Demands were timely under the text of O.C.G.A. § 33-4-6. (Doc. 176, at 17-22.)

As to the Houston Demand, the demand was not sufficient to put *Westfield* on notice that *it* was facing legal action. The Houston Demand names and makes a demand exclusively on Houston, referred to therein as "Tokio Marine HCC." (Doc. 176-1.) Westfield is never addressed or mentioned. (Id.) While only substantial compliance is required, the demand must put the insurer on notice it is facing a bad faith claim. Bayrock, 648 S.E.2d at 435. Courts have found substantial compliance to mean no specific language is necessary, and technical deficiencies in how notice is provided are not terminal; however, the Court is not aware of any cases that find a demand made against a different insurer altogether provides sufficient notice. See Cotton States Mut. Ins. Co. v. Clark, 151 S.E.2d 780, 786 (Ga. Ct. App. 1966) (finding insured's oral threat to take insurer to Court sufficient to satisfy demand requirement); Canal Indem. Co. v. Greene, 593 S.E.2d 41, 44-45 (Ga. Ct. App. 2003) (finding demand substantially complied despite technical deficiencies). On its face, the Houston

Demand does not provide Westfield with notice a demand is being made against it.    The letter is not only addressed solely to Houston, but it reads, "Ms. Davis is now giving [Houston] one opportunity to settle this case . . . . [T]his offer is [Houston's] one chance to protect its customer." (Doc. 176-1, at 3 (emphasis omitted).)    And, strictly construing the requirements of the statute, the demand must be made *against the insurer*. O.C.G.A. § 33-4-6.  Because the Houston Demand was not made against Westfield, the Court finds it facially unsatisfactory and does not address the Parties' arguments as to its timeliness.

As to the August Demands, the Parties disagree as to whether the demands must be made sixty days prior to filing suit.    (Doc. 151-1, at 22; Doc. 176, at 21-22; Doc. 179, at 21.)    However, a review of Georgia case law shows O.C.G.A. § 33-4-6 has long been interpreted to require a demand be made sixty days prior to filing suit.  See Lavoi Corp. v. Nat'l Fire Ins. Co. of Hartford, 666 S.E.2d 387, 391 (Ga. Ct. App. 2008) (citation omitted) ("To prevail on a claim for an insurer's bad faith . . . the insured must prove . . . that a demand for payment was made against the insurer within 60 days prior to filing suit"); Bayrock, 648 S.E.2d at 435 (holding the same); Primerica Life Ins. Co. v. Humfleet, 458 S.E.2d 908, 910 (Ga. Ct. App. 1995) ("In order to prevail on a claim for an insurer's bad faith, the insured must prove . . . that a demand for payment was lodged against the insurer at least 60 days prior

37

to filing suit"); <u>Cotton</u>, 151 S.E.2d at 786 ("plaintiff could not recover attorneys fees or penalty unless he had made a demand more than sixty days prior to the filing of the action"). Thus, because both August Demands were made after litigation began, they fail to satisfy O.C.G.A. § 33-4-6's demand requirement. Westfield's motion for summary judgment on the issue of statutory bad faith penalties and attorneys' fees is therefore **GRANTED.**

> 3. <u>The Agreement's Effects on Recovery & Westfield's Right to Recover</u>

Finally, Westfield seeks a declaration that Plaintiff's remedies are limited to the amount stated in the Agreement, $1,375,000. (Doc. 151-1, at 23-24.) Plaintiff argues this is a mischaracterization of the Agreement, which should not be read to limit Plaintiff's recovery for other claims such as attorneys' fees and bad faith. (Doc. 176, at 25-26.)

The Agreement is handwritten and reads, in full,

> Court will opine on coverage under Westfield Policies. If [Plaintiff] successful, [Plaintiff] may seek return of the $1,375,000 amount it contributed in the coverage action. If Westfield successful, Westfield has recoupment rights against [Plaintiff] for $1,625,000 in the coverage action. [Plaintiff] and Westfield will amend their claims in the coverage action to assert these recoupment claims.

(Doc. 117-2.)

Under Georgia law, "intentional relinquishment of a known right" is generally a question for the jury. <u>Vratsinas Const. Co. v. Triad Drywall, LLC</u>, 739 S.E.2d 493, 496 (Ga. Ct. App. 2013).

Moreover, to find waiver of a right, "the evidence relied upon to prove a waiver must be so clearly indicative of an intent to relinquish a then known particular right or benefit as to exclude any other reasonable explanation." Id. The Court cannot infer from the one-page, hardly legible note, which does not even mention the rights in question, that Plaintiff intended to waive its rights to bring claims for consequential damages. Moreover, Westfield points to no case law that would support such a finding. (See Doc. 151-1, at 23-24; Doc. 179, at 24-25.) Accordingly, Westfield's motion for summary judgment on the Agreement's limitation of Plaintiff's rights is **DENIED**.

Relatedly, Westfield requests a declaration that because there is no coverage under the Westfield Policy, Plaintiff's failure to reimburse Westfield in accordance with the terms of the Agreement triggers Westfield's right to recover. In light of the foregoing, this request is **DENIED**.

## C. Plaintiff's Motion for Partial Summary Judgment

Plaintiff also moves for partial summary judgment, seeking declaratory judgment that Westfield breached its duty to defend against the underlying claims, and that the resulting loss was covered under the BLC and/or the CLUC Form. (Doc. 153-1, at 1.) Westfield opposes the motion, arguing there is no coverage under either the BLC or CLUC Forms and, therefore, it did not breach its duty to defend. (Doc. 174.) The Parties' arguments mirror those

presented in their briefings on Westfield's motion for summary judgment. (Compare Docs. 153, 174, 181 with Docs. 151-1, 176, 179.) Thus, for the same reasons stated above, the Court finds there is no coverage under the BLC Form because of the Abuse or Molestation Exclusion contained therein. However, Plaintiff is entitled to coverage under the CLUC Form, as none of the exclusions Westfield relies on to deny coverage apply to the injuries at hand.

In the underlying action, Westfield initially declined to provide a defense upon receipt of notice of the claim and then, on August 30, 2023, provided a defense under the BLC Form pursuant to a full reservation of rights. (Doc. 90-1.) The Court has determined herein there was no coverage under the BLC Form; thus, Westfield's initial position, declining to provide a defense under the BLC Form, did not breach its duty to defend. Nonetheless, there was coverage under the CLUC Form, which provided coverage in the event the BLC Form did not. (Doc. 153-4, at 387, 396, 401.) As such, to the extent Westfield's duty to defend under the CLUC Form was ripe and it failed to fulfill this duty, Westfield breached its duty to defend. In accordance with the foregoing, Plaintiff's motion for partial summary judgment is **GRANTED**.


## IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED, DECLARED,** and **ADJUDGED** as follows:

1. There is no coverage, duty to indemnify, or duty to defend under the BLC Form's Abuse or Molestation Exclusion.

2. There is coverage, a duty to indemnify, and a duty to defend under the CLUC Form.

3. Plaintiff's claims for bad faith and attorneys' fees brought pursuant to O.C.G.A. § 33-4-6 fail as a matter of law.

Consistent with the foregoing declarations, the Parties' motions for hearings (Docs 182, 183) are **DENIED**; Plaintiff's first motion to strike (Doc. 140) is **DENIED AS MOOT** and second motion to strike (Doc. 143) is **GRANTED IN PART AND DENIED IN PART**; Westfield's motion for summary judgment (Doc. 151) is **GRANTED IN PART AND DENIED IN PART**; and Plaintiff's motion for partial summary judgment (Doc. 153) is **GRANTED**. Plaintiff's common law bad faith claim and the issue of damages may proceed.

**ORDER ENTERED** at Augusta, Georgia, this _16th_ day of July, 2025.

_____
HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA